# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| JAMES KETEN and WANDA KETEN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:06-CV-341 JVB |
| v. ) | |
| ) | |
| STATE FARM FIRE AND CASUALTY CO., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant State Farm Fire and Casualty Co.'s motion for summary judgment against Plaintiffs James and Wanda Keten; Defendant's motion for summary judgment on its counterclaim against Plaintiffs; and Plaintiffs' Federal Rule of Civil Procedure 72(A) objection to the Order Granting Defendant's Motion to Exclude Expert Testimony. For the reasons set forth below, both Defendant's motions for summary judgment are denied, and Plaintiffs' objection is also denied.

**A. Summary Judgment Standard**

Summary judgment is proper only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Williams v. Excel Foundry & Machine, Inc.,* 489 F.3d 309, 310 (7th Cir. 2007). A genuine issue of material fact exists if there is sufficient evidence such that a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must establish that no material facts are in dispute, and any doubt must be resolved against the moving

party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). The court must view the record in the light most favorable to the non-moving party. *Nat'l Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996).

**B. Facts**

On September 19, 2005, Plaintiffs' house was damaged by a fire which originated in the basement. Plaintiffs owned their home in Gary, Indiana, and have resided there since 1978. At the time of the fire, Plaintiffs home was insured by Defendant State Farm. After the Gary Fire Department contained the fire, Plaintiffs contacted the Defendant and reported the incident. Defendant assigned adjuster Michael Harrison to the Plaintiffs' claim. Harrison requested that Plaintiffs fill out paperwork and inventory their damaged personal property. Plaintiffs allege that Harrison told them to guess about replacement costs on the forms. Plaintiffs approximated $200,000 for their damaged property, and returned their estimates to Defendant in early 2006. Plaintiffs listed, among other things, clothing, books, and decorations worth $18,000; tools, electronics, and building materials worth $6,000; and toiletries in one bathroom worth $10,000. Defendant paid Plaintiffs $83,442.82 for repairs to the dwelling; $27,907.48 for personal contents; and $6,518 for loss of use pursuant to Plaintiffs' insurance policy.

After the Plaintiffs submitted their property loss forms, Plaintiffs allege Harrison informed them that their damage calculations were too high and that no one would believe such claims from a "black guy." Plaintiffs allege Harrison instructed them to lower their estimates to $50,000, and on February 10, 2006, Defendant sent Plaintiffs a letter informing them that there was a "discrepancy" between articles observed in the home and removed to a cleaning service and the items listed on the inventory forms. (DE 29, Ex. 15). Plaintiffs submitted revised

2

property estimates, and Defendant's investigations unit began an inquiry into Plaintiffs' claim. The investigations unit discovered that Plaintiffs submitted insurance claims for vehicle accidents, personal injuries, a worker's compensation claim, and vehicle theft in the past. (DE 29, Ex. 16). The unit also discovered that Plaintiffs filed for Chapter 7 bankruptcy in 2001, and Mr. Keten filed Chapter 13 bankruptcy in 2005, valuing his property at $3,300.

Plaintiffs and their sons, LaDerek and Lamont, submitted to seven separate Examinations Under Oath ("EUO") conducted by Defendant. Defendant asked them to bring documents which included copies of receipts for personal property, copies of utility bills, bankruptcy pleadings, bills, invoices, cancelled checks, photographs of property claimed as damaged, payroll check stubs, W-2 forms, Federal Income Tax Returns, evidence of earned income, and bills showing living expenses. At one of her EUOs, Plaintiff Wanda Keten provided a sales history form for the purchase of a La-Z-Boy chair, a piano replacement, a queen bed, and a paycheck stub. Plaintiff James Keten brought three earning statements and bankruptcy documentation showing he had $300 taken out of his checks from the Gary Housing Authority. Defendant also possessed numerous photographs of the damaged home and interior rooms.

Plaintiffs' insurance contract requires certain duties after a loss:

> . . . .
> c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
> d. as often as we reasonably require:
> (1) exhibit the damaged property;
> (2) provide us with records and documents we request and permit us to make copies;
> (3) submit to and subscribe, while not in the presence of any other **insured:**
> (a) statement; and
> (b) examinations under oath; . . . .

(DE 29, Ex. B, p. 19).

Defendant were not satisfied that Plaintiffs had provided enough documentation and continued to send letters to the Ketens requesting more proof of their personal property loss. Plaintiffs responded that they had conducted a search and had given Defendant all the documentation they possessed. Plaintiffs claim that their documentation was destroyed by fire or thrown out by contractors who arrived after the fire. On August 28, 2006, Defendant advised Plaintiffs that their claim was being denied and that they had less than one month to file a lawsuit to dispute the claim. Plaintiffs found representation and filed a complaint in Lake Superior Court in Gary, Indiana on September 18, 2006. The case was then removed to this Court. Plaintiffs now proceed pro se.

**C. Parties' Contentions**

Plaintiffs claim that State Farm breached its insurance contract with Plaintiffs by denying their claim. Plaintiffs allege bad faith in Defendant's delay of payments, assert they have not been fully compensated for their loss, and suffered emotional distress. Additionally, Plaintiffs filed a motion objecting to an Order granting exclusion of their expert witness.

Defendant filed two motions for summary judgment. First, Defendant moves for summary judgment on Plaintiffs' claims for breach of contract, bad faith, and punitive damages. Defendant contends that it did not breach its contractual obligations and did not breach its duty to deal with the Plaintiffs in good faith. Second, Defendant moves for summary judgment on its counterclaim against Plaintiffs, alleging that Plaintiffs breached their insurance contract by failing to provide adequate documentation for their lost personal property and by making

material misrepresentations about their damages. Defendant claims they are owed $117, 868.30 for the payments made before Plaintiffs voided their insurance policy.

**D. Discussion**

The parties agree that Indiana substantive law governs this diversity action, and each party relies on Indiana law in their motions. Under *Erie Railroad v. Tompkins*, 304 U.S. 64, 80 (1938), this Court applies the law of the highest court of the state as if the issue were before that tribunal. Below, each claim is considered in turn.

**(1) Breach of Contract Claim and Counterclaim**

Defendant moves for summary judgment on Plaintiffs' breach of contract and bad faith claims; Defendant also moves for summary judgment on its breach of contract counterclaim.

Defendant asserts that Plaintiffs breached their contractual duties under their homeowners insurance policy by making material misrepresentations on property valuation forms and failing to provide adequate documentation of loss.

While it is true that Plaintiffs' insurance policy contains a section that requires the insured to provide documentation of loss and sit for EUOs at the request of Defendant, failure to provide all requested documentation does not necessarily constitute substantial noncompliance with the insurance contract. *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1089 (Ind. Ct. App. 1992). In *Plummer*, an insurer defendant denied plaintiff's fire insurance claim. *Id.* at 1087. Defendant contended that plaintiff breached his insurance contract by not providing required documentation of property loss. *Id.* Additionally, defendant denied coverage because the insurer believed that plaintiff intentionally set the fire. *Id.* As for

documentation, Plaintiff refused to submit tax returns and could not produce invoices and receipts to substantiate losses. *Id.* at 1089. Plaintiff sent a letter to suppliers in an attempt to get an inventory valuation, but ultimately argued that the fire prevented him from producing documentation. *Id.* The jury found that Plaintiff did not breach the insurance contract, and the Indiana Court of Appeals affirmed. *Id.* The court noted that even in the age of computerized documentation "where, as here, there was some attempt at securing documentation from suppliers, the ultimate decision is left to a properly instructed jury to decide whether the insured has substantially complied with the policy requirements. We will not reweigh the evidence to overturn the jury's findings." *Id.* Further, citing *Ohio Farmers Ins. Co. v. Glaze*, 101 N.E. 734 (Ind. Ct. App. 1913), the court noted that fire can provide an adequate excuse for failure to provide documentation in an insurance case. *Plummer*, 590 N.E.2d at 1089.

Here, as in *Plummer*, the Defendant claims that Plaintiffs did not substantially comply with their contractual obligation to provide proof of loss. Plaintiffs answer that they have made efforts to provide required documentation and assert that the remaining information was destroyed by fire or disposed of by contractors sent to the home by Defendant. Plaintiff Wanda Keten provided a sales history form for the purchase of a La-Z-Boy chair, a piano replacement, a queen bed, and a paycheck stub. At the request of Defendant, Plaintiffs estimated their losses and submitted lengthy personal property forms twice. Plaintiff James Keten provided three earning statements and bankruptcy documentation showing he had $300 taken out of his checks from the Gary Housing Authority. Defendant also possessed numerous photographs of Plaintiffs' home and interior rooms. Additionally, Plaintiffs and their sons agreed to sit for seven separate EUOs at the request of Defendant. As in *Plummer*, Plaintiffs present a genuine issue of material fact that needs to be resolved by the jury.

6

Defendant relies on three cases for their argument that Plaintiffs breached their insurance contract, and all three are distinguishable from the present dispute. In *Employers Mutual Casualty Co. & Hamilton Mutual Ins. Co. v. Skoutaris*, 453 F.3d 915 (2006), a fire destroyed plaintiff's restaurant, and defendant insurer requested documentation and an EUO as required by the insurance contract. *Id.* at 919–20. Plaintiff "had few details or documents supporting his valuation of different items" and refused to sit for an EUO. *Id.* at 922. The district court did not reach the issue of whether the failure to produce documents breached the insurance contract but found that the refusal to sit for an EUO was a material breach. *Id.* at 922. The appellate court affirmed. *Id.* at 926.

In *Morris v. Economy Fire & Casualty Co.*, 848 N.E.2d 663 (Ind. 2006), the Indiana Supreme Court affirmed a trial court's granting of summary of judgment for defendant insurer where plaintiff refused to sit for an EUO and would not submit documentation of loss until Defendant turned over Plaintiff's prior recorded statements. *Id.* at 666. The court held that plaintiff could not impose a precondition on defendant, such as requiring the defendant to provide prior statements, before fulfilling contractual duties. *Id.* at 667.

In *Knowledge A–Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411 (Ind. Ct. App. 2006), another case relied on by Defendant, plaintiff did not appear for an EUO despite repeated requests by defendant insurer. *Id.* at 422. Further, plaintiff refused to submit requested documentation of loss because the defendant's requests were "unduly burdensome and not commensurate with what is to be reasonably expected." *Id.* at 421. The court found that Plaintiff breached the contract as a matter of law by failing to sit for an EUO. *Id.* at 422.

These cases relied on by Defendant are different from the present dispute. Unlike *Skoutaris*, *Morris*, and *Knowledge*, Plaintiffs did not refuse to sit for an EUO. On the contrary,

Plaintiffs and their sons sat for seven separate EUOs. Additionally, unlike in *Morris*, Plaintiffs never refused to provide documentation until Defendant met a precondition. Plaintiffs allege they provided all documentation that was available and not destroyed by fire. Finally, unlike in *Knowledge*, Plaintiffs sat for EUOs and never claimed that requests for documentation would not be honored due their unreasonableness. Plaintiffs maintain merely that the fire destroyed much of their documentation, and they have supplied as much as they are able.

Plaintiffs created an issue of fact as to whether the documentation they provided to Defendant and their efforts to obtain further documentation constitute substantial compliance with the insurance contract. Further, given the documentation presented in this case, a factual dispute exists as to the accuracy of the reported losses. Therefore, Defendant's motions for summary judgment on Plaintiff's claim and on Defendant's counterclaim as to breach of contract are denied.

**(2) Bad Faith**

Additionally, Defendant moves for summary judgment on Plaintiffs' claim that the insurer denied their insurance claim in bad faith. The Indiana Supreme Court recognizes "a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). When discharging an insured's claim, the insurer must "refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* An insurer may have a "good faith difference of opinion over whether a claim was or was not covered," and deny a claim as long as it is denied as a result of a good faith dispute. *Monroe Guar. Ins. Co. v.*

*Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005). To establish bad faith, plaintiff may, but need not, prove that insurer had knowledge that there was no legitimate basis to deny liability. *Id.* "As a general proposition,'[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Id.* (citing *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)).

Here, Defendant denied Plaintiffs' claim one month before the end of the statute of limitations period. Before that time, Plaintiffs continued to receive requests for information, and they allege that they were told their claim was still under review. Plaintiffs then received a letter from Defendant informing them that the claim was officially denied and that they had one month to file a lawsuit disputing their decision. Additionally, Plaintiffs assert that their insurance adjuster informed them their claim had to be reduced because of their race. While there is evidence that Defendant had a good faith dispute as to the insurance coverage, a reasonable jury could decide that Plaintiffs present evidence of ill will, unreasonable delay, or other elements of bad faith. Therefore, Defendant's motion for summary judgment as to bad faith insurance is denied.

**(3) Objection to Order Granting Exclusion of Expert Testimony**

Finally, Plaintiffs object to an Order Granting Exclusion of Expert Testimony entered by Magistrate Judge Andrew Rodovich on December 10, 2008. (DE 61). After Plaintiffs filed suit against Defendant, the parties agreed that Plaintiffs' deadline for expert disclosure was March 31, 2008; Defendant's deadline for expert disclosure was April 30; and the deadline for Plaintiffs' rebuttal expert disclosure was May 31. On March 27, Plaintiffs' counsel informed Defendant that they did not intend to disclose any experts, but reserved the right to submit a

9

rebuttal expert; however, when Defendant missed their expert disclosure deadline, Plaintiffs requested the schedule to be pushed back and requested that their opportunity to disclose an expert be reinstated. Defendant agreed and provided the new deadline of May 30, 2008. Plaintiffs missed the new deadline of May 30, and Defendant agreed to grant them an additional week. On the new deadline, Plaintiffs submitted an expert disclosure but did not include any statements or opinions that would be stated by the expert, exhibits to be used, or a list of cases in which the expert had testified. Defendant then filed a motion for summary judgment on July 29, 2008. Two months after their last deadline passed, Plaintiffs submitted a letter from the expert witness indicating his findings, which the Magistrate Judge found to be superficial and conclusory. (DE 61).

A district court can set aside or modify a magistrate's order if the district court finds the order to be clearly erroneous or contrary to law. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "[T]he district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Id.*

Here, the magistrate judge found that Plaintiffs did not have a substantial justification for their failure to meet the deadline in violation of Federal Rule of Civil Procedure 37(c)(1), and that the failure was harmful to Defendant. Not only were the expert disclosures deficient, the Plaintiffs' proffered excuses for delay were scheduling conflicts with the expert and a lack of funds.

On these facts, the magistrate judge's order is not clearly erroneous and is not contrary to law; therefore, the order is affirmed.

### E. Conclusion

Defendant's motion for summary judgment on Plaintiffs' claims (DE 29) is DENIED; Defendant's motion for summary judgment on Defendant's counterclaim against Plaintiffs (DE 56) is DENIED; and Plaintiffs' motion for review of the Order Granting Exclusion of Expert Testimony (DE 66) is DENIED.

SO ORDERED on March 29, 2010.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge